UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ERIK J. INGRAM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cv-01081-SLD |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff Erik J. Ingram requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, denying his application for Disability Insurance Benefits ("DIB") under Title II as well as his application for Supplemental Security Income ("SSI") under Title XVI. Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 13, and Defendant's Motion for Summary Affirmance, ECF No. 18. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Affirmance is granted.

BACKGROUND

Eric Ingram injured his back in a vehicle accident in 1997. He continued working as a welder and truck driver until 2007, when he had to stop due to the pain from the accident. R. 493. That same year, Ingram was diagnosed with fibromyalgia, lumbar disc degeneration, osteoarthritis, and chronic pain. He also suffers from depression, which was first diagnosed in 2000 and reported as unchanged in June of 2008 and in May of 2011. R. 583. He first applied for DIB and SSI on August 22, 2007. R. 32. He was denied initially, upon reconsideration, and

1

after a hearing in front of Administrative Law Judge ("ALJ") David Thompson on October 7, 2009.

He filed a second application for DIB and SSI on June 8, 2010, alleging disability beginning on May 12, 2010. In July of 2010, Ingram had four toes amputated following a lawnmower accident. R. 22. His second application was denied initially on September 29, 2010, and upon reconsideration on December 13, 2010. R. 13. Ingram was diagnosed with sleep apnea in March of 2011. R. 22. He requested a hearing on his second application, and one was held before ALJ Diane Raese Flebbe on December 7, 2011. On January 4, 2012, the ALJ found Ingram to have the following severe impairments: fibromyalgia, degenerative disc disease, obstructive sleep apnea, residual effects of partial left foot amputation, and depression, anxiety, and personality disorders. R. 16. Notwithstanding, the ALJ found that Ingram had the Residual Functional Capacity ("RFC") to perform sedentary work with the requirement of a sit/stand option. On January 3, 2013, the Appeals Council denied Ingram's request for review, making the ALJ's decision final. R. 6. Ingram filed the present action on February 21, 2013, requesting judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## LEGAL FRAMEWORK

### I. District Court Review of the ALJ Decision

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *See Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). To determine whether substantial evidence exists, the court reviews the record as a

whole but does not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *See id.* (citing *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999)). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Even if reasonable minds could differ concerning a disability determination, the ALJ's decision must be affirmed if it is adequately supported. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citations omitted). Rather, the ALJ's decision must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning." *Id.* at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)). The ALJ has a duty to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010); *Scott*, 297 F.3d at 595. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)). If there is an error of law, "reversal is, of course, warranted irrespective of the

3

volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

**II.    Entitlement to Benefits**

In order to be entitled to SSI and/or DIB, a claimant must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Social Security Act is a two-step process.

First, the claimant must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the claimant:

1) Has not, during the relevant time period, performed any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2 or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the claimant is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the claimant is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 requires the ALJ to proceed to step 4, where the ALJ will make a finding about the claimant's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC "measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied." *Bowen v. New York*, 476 U.S. 467, 471 (1986) (citing 20 CFR §§ 404.1520(e); 416.920(e)). If, on the other hand, the claimant cannot perform his past relevant work, then the RFC is used in step 5 to determine whether the plaintiff can adjust to other work. 20 C.F.R. § 404.1520(e).

The claimant has the burden of production and persuasion at steps 1 through 4. But once the claimant shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

## DISCUSSION

Ingram asserts the ALJ erred in three main ways, requiring her decision to be reversed and for the case to be remanded.[1] Ingram contends the ALJ failed to discern the correct onset date in his case and failed to consider all his physical and mental limitations in determining his RFC. Additionally, Ingram claims that the ALJ was patently wrong in finding his testimony not credible. The Court disagrees.

---

[1] Ingram raises a number of issues with the ALJ's decision. Some are mere "nit-picking," *see Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004), assertions without any citation to factual or legal support, or are insufficiently developed in his brief.

5

**I. Onset Date**

Ingram contends that the ALJ erred by identifying his onset date as May 12, 2010, the date of the Appeals Council decision in Ingram's prior application. He argues the date should instead be October 8, 2009, the date after the first unfavorable ALJ decision. R. 29. The Social Security Administration has established the method an ALJ is to use to determine the onset date of a disability when the injury, as here, is of a non-traumatic origin. *See* SSR 83-20. The ALJ should consider three factors: the date alleged by the claimant, the date on which he left work, and medical evidence of the onset date. *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999). The most important factor is the medical evidence, and the chosen onset date must be consistent with it. *Id.* In a case where the Plaintiff challenges the ALJ's selected onset date, "the issue is whether there is substantial evidence in the record to support the date chosen by [the ALJ], not whether an earlier date could have been supported." *Id.* at 512.

Here, Ingram argues that the ALJ's erroneous application of res judicata led her to select May 12, 2010, over October 8, 2009, the date his first benefits application was denied. Res judicata prohibits re-litigation of the same claim. *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998). But here, the ALJ never referenced res judicata, or stated or implied that she was limited by the previous application. In fact, she considered medical evidence that pre-dated May 12, 2010, in reaching her decision. It appears, therefore, that the source of the May 12, 2010 onset date was Ingram's own allegations, not res judicata.

Pursuant to SSR 83-20, the "starting point" in determining onset date is the claimant's alleged date. SSR 83-20. Ingram alleged both on his application and in his hearing testimony that his onset date was May 12, 2010. R. 19. As to the second and third *Henderson* factors, Ingram does not argue that the date is unsupported by substantial evidence—and the Court does

not independently find such an insufficiency. Furthermore, Ingram does not argue that the medical evidence would better support October 8, 2009, as his onset date. Therefore, the Court finds no error in the ALJ's selection of May 12, 2010, as the onset date of Ingram's claimed disability.

## II. ALJ's RFC Determination

Residual functional capacity is an administrative assessment of what work-related activities an individual can perform despite his limitations. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). In determining a claimant's RFC, the ALJ must consider all of the claimant's impairments, including impairments that are not severe, to the extent that they are supported by the medical evidence. 20 C.F.R. § 404.1545(a)(2). Here, the ALJ said that Ingram could perform work of a sedentary nature except that his condition limits him to work with a sit/stand option. R. 25. Ingram challenges the RFC determination in three ways. First, Ingram alleges that the ALJ failed to adequately account for his fibromyalgia when assessing his RFC. Pl.'s Mem. in Supp. Mot. Summ. J. 14, ECF No. 19. Second, Ingram alleges that the ALJ erred in evaluating his mental impairments by not giving his global assessment of functioning ("GAF") score greater weight. *Id*. at 15. Finally, Ingram contends that the ALJ failed to adequately account for his difficulties regarding concentration, persistence, and pace. *Id*.

### A. The ALJ's Consideration of Ingram's Fibromyalgia

The ALJ did not err in taking account of Ingram's fibromyalgia. Ingram argues that the ALJ should have applied SSR 99-2p and as a result of her failing to do so, his fibromyalgia was not evaluated properly. Mem. in Supp. Summ. J. 14–15. SSR 99-2p provides guidance to ALJs in evaluating chronic fatigue syndrome, not fibromyalgia. Ingram offers no support for his claim that fibromyalgia and chronic fatigue syndrome are "nearly identical" conditions. *Id*. at 15.

7

Specific guidance on evaluating fibromyalgia in disability claims is provided in SSR 12-2p, which was issued on July 25, 2012. Although Social Security Rule 12-2p was not in effect at the time of Ingram's hearing, the ALJ's evaluation is consistent with its guidance. For claimants with fibromyalgia, SSR 12-2p suggests only one additional consideration in determining RFC: "[W]e will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" Here, the ALJ noted that "[t]he objective record supports that the claimant has a long-standing diagnosis of fibromyalgia . . . from long prior to the alleged onset date of disability." R. 21. The ALJ concluded that more restrictive limitations were appropriate for Ingram based on the totality of the evidence. Therefore, the ALJ properly accounted for Ingram's fibromyalgia.

### B. The ALJ's Consideration of Ingram's Mental Impairments

Ingram alleges that his mental impairments were not adequately reflected in the RFC because his GAF score was not given the proper weight. In general, GAF scores are "useful for planning treatment" but do not necessarily reflect a patient's functional level. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Rather, GAF scores reflect either severity of symptoms or functional level, whichever is worse. *Id.* Accordingly, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Id.* (quoting *Wilkins v. Barnhart*, 69 Fed. App'x 775, 780 (7th Cir. 2003)). Rather than rely only on the bare numerical score, an ALJ is entitled to consider the clinician's narrative explanation of impairments that accompanies the score. *Id.* A GAF score may be a momentary assessment of the impairments of an individual that has the potential to change. Here, Ingram was assessed by a mental health professional and given a GAF score of 39 on both June 23, 2008, and May 25, 2010. R. 19. A GAF score of 39 indicates:

> [S]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

*Granados v. Astrue*, 09 C 7600, 2011 WL 746285, at *2 n.1 (N.D. Ill. Feb. 24, 2011). Contrary to Ingram's argument, the ALJ discussed the evidence and her reasons for assigning certain evidence more or less weight. She reasoned that the GAF is subjective and merely a snapshot of a specific moment in time rather than an indication of a claimant's overall level of functioning over an extended period. *Id*. Importantly, she found that the contemporaneous mental status evaluations were inconsistent with the GAF score, and demonstrated that Ingram had "generally intact cognitive functioning." *Id.* at 19–20. For these reasons, the ALJ did not err in her consideration of the GAF score and consequently, her consideration of Ingram's mental impairments.

Ingram also argues that the ALJ mistakenly read Dr. Satkauskas's abbreviation "cont." as "controlled," instead of "continued," in his treatment note from March 29, 2010. R. 20. The Court agrees. That is, instead of discerning that Ingram would *continue* to take Prozac and Abilify for his depression and anxiety, the ALJ noted that his depression and anxiety impairments were being *controlled* by Prozac and Abilify. This error, however, was harmless. Even if the ALJ had read the abbreviation correctly, it is unlikely that the RFC determination would be affected. Ingram's medication, and supplemental notes regarding his medication, are tiles in the larger mosaic of the RFC analysis. And, the ALJ noted other evidence in the record that Ingram's depression and anxiety were improving. R. 20. No reasonable ALJ would reach a contrary decision on remand based only on a correct reading of the abbreviation as "continued."

*See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The Court finds that the ALJ's mistaken reading did not impact the ALJ's building of an accurate and logical bridge. *Id.*

### C. Ingram's Difficulties with Concentration, Persistence, or Pace

Ingram argues that the ALJ's restrictions fail, in two ways, to account for his difficulties in concentration, persistence, and pace. First, Ingram argues, the ALJ restricted him to "work that is not production paced, but rather work that is goal directed or goal oriented," R. 18, in spite of a finding in his Mental Residual Functional Capacity Assessment that he was moderately limited in the "ability to set realistic goals or make plans independently of others," R. 428. According to Ingram, "[i]t would appear that these are really the same thing." Mem. in Supp. Mot. Summ. J. 15. But Ingram does not support this assumption. A review of the hearing transcript reveals that the purpose of restricting Ingram to "goal oriented or goal directed" work was to accommodate potential distraction due to pain or medications, and to allow for some difficulty with staying on-task. R. 617 ("…the work should not be production pace work, but rather goal oriented or goal directed secondary to distraction from pain and also side effects of medication."). Moreover, difficulty in *setting* goals does not logically equate to difficulty in *achieving* them.

Second, Ingram argues that the ALJ ignored a limitation in the same Mental RFC Assessment on his "ability to respond appropriately to changes in the work setting." Mem. in Supp. Mot. Summ. J. 16. The Assessment, however, notes no evidence of limitation in that category. R. 428. Accordingly, the Court rejects Ingram's contention that the ALJ failed to consider his limitations in concentration, persistence, and pace when she assessed his RFC.

In sum, the ALJ's determination of Ingram's RFC is supported by substantial evidence and accounted for all his limitations, including fibromyalgia, his mental impairments, and his difficulties regarding concentration, persistence, and pace.

### III. The ALJ's Credibility Determination

Ingram contends that the ALJ erred in finding certain portions of his testimony not credible.[2] If a claimant reports symptoms that are not "substantiated by objective medical evidence," the ALJ must determine the credibility of these statements in light of the entire record. *See* SSR 96-7p. The ALJ must state the "specific reasons" for his or her credibility determination. *Id.*; *see also Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Unsubstantiated statements that the claimant's symptoms have been "considered" will not suffice. SSR 96-7p. The ALJ is obligated to state enough of the rationale underlying his credibility determination so the claimant and reviewing bodies understand why the credibility determination was reached. *See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). The courts will give "special deference" to an ALJ's credibility determination, and an ALJ's determination is subject to reversal only if it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). This Court's review is confined to the rationales offered by the ALJ. *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943). The Court finds no error in the ALJ's decision to find part of Ingram's testimony not credible.

The ALJ noted multiple inconsistencies within Ingram's testimony and the objective medical evidence. For example, Ingram's self-evaluation of his ability to sit, stand, or lift for any period time changed between his May 25, 2010 mental health assessment and the September 10, 2010 Physical Consultative Exam ("CE"). In May 2010, Ingram reported it was "difficult to stand, sit or lift for any period of time," and then at his September 2010 assessment, he could sit

---

[2] Ingram argues that the ALJ should have considered the seven factors listed in 20 C.F.R. § 404.1529(c) in evaluating Ingram's credibility, Pl.'s Mem. in Supp. Mot. Summ. J. 16, but these factors go to the ALJ's consideration of other evidence about the nature and severity of a claimant's impairments—they do not lay out a framework for credibility determinations. Ingram also disputes the propriety of the ALJ's "look[ing] for inconsistencies," but 20 C.F.R. § 404.1529(c)(4) indicates that "inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence" will be considered.

for one to two hours without experiencing pain. R. 23. At a May 20, 2010 examination, he was observed to walk with an antalgic gait, but only five days later, his gait was reported as normal. *Id*. On November 12, 2010, Ingram stated that he cooked, cleaned, shopped, and tended to his lawn; while these activities do not prove that Ingram is not disabled, they do demonstrate his ability to sit, stand, walk, lift light items, and concentrate to complete tasks. At the hearing, Ingram initially testified that his medication did not help at all. R. 24. When further questioned by the ALJ he admitted that his medication was 60-70% effective. *Id*. In addition, the medical examiners indicated that Ingram never complained of side effects from his medication, but Ingram did so at the hearing. *Id*. Ultimately, the ALJ found that "the record did not demonstrate clearly that he has the significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities which are associated with intense and disabling pain." R. 24. Therefore, the Court does not find that the ALJ's credibility determination was "patently wrong."

## CONCLUSION

For the reasons described above, Plaintiff's Motion for Summary Judgment, ECF No. 13, is DENIED, and Defendant's Motion for Summary Affirmance, ECF No. 18, is GRANTED.

Entered this 25th day of July, 2014.

s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE